IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Michael Williams,<br><br>                Plaintiff,<br><br>    vs.<br><br>Intier Automotive Interiors of<br>America, Inc., d/b/a Magna,<br><br>                Defendant. | Civil Action No. 7:09-1144-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's partial motion to dismiss (doc. 78). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

The plaintiff was employed with the defendant from approximately January 2008 to May 2009 in the Quality Department. On July 8, 2008, the plaintiff was chosen for a random drug test. On or about July 21, 2008, the plaintiff was told that this drug test was positive for marijuana use, he was demoted, and he had his salary reduced by $20,000 per year. The plaintiff denied the validity of the test result and immediately was retested by an independent lab. The plaintiff alleges that the independent lab test result was negative for marijuana. The plaintiff provided this result to the defendant, but the defendant did not reinstate the plaintiff. The plaintiff insisted that the defendant have the specimen collected on July 8, 2008, retested. When the defendant did not do so, the plaintiff took action which

led to the retesting of the original specimen. According to the plaintiff, the result of the retest was negative for marijuana (3rd amended compl. ¶ 9).

The plaintiff filed a charge of discrimination with the EEOC in October of 2008 based on a failure to receive performance reviews provided to similarly-situated Caucasian employees of the defendant. He filed the initial complaint against the defendant on May 1, 2009. He was terminated from employment by the defendant on May 15, 2009. In his amended complaint filed in December 2009, the plaintiff alleged causes of action against the defendant for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

On March 24, 2010, the Honorable William M. Catoe, United States Magistrate Judge (Retired), granted the plaintiff's motion to amend his complaint to add causes of action for breach of contract and breach of contract accompanied by a fraudulent act against the defendant. The defendant filed a motion for more definite statement, arguing the recently added claims fail to meet the notice pleading standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Judge Catoe granted the motion for more definite statement on May 4, 2010, and directed the plaintiff to file a third amended complaint, which the plaintiff did on May 18, 2010. The defendant filed the instant motion to dismiss on May 21, 2010.

## **APPLICABLE LAW AND ANALYSIS**

The defendant argues that the plaintiff's new causes of action for breach of contract and breach of contract accompanied by a fraudulent act, the third and fourth causes of action in his third amended complaint, should be dismissed for failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine whether the complaint sets forth sufficient facts "to raise a right to relief above the speculative level."

2

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Even though a complaint's allegations are viewed in a light most favorable to the plaintiff, the claim presented must be "plausible." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556). Therefore, for a complaint to survive a motion to dismiss, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002)).

***Breach of Contract Accompanied by a Fraudulent Act***

The substantive allegations related to the plaintiff's breach of contract accompanied by a fraudulent act cause of action are as follows:

34. Defendant represented to Plaintiff that he would be provided a fair opportunity to refute any erroneous drug test. These representations were made by Tom Heiman in or about July 2008 at a seminar conducted for Defendant's new drug test policy.

35. This representation was false and material.

36. Upon information and belief, Defendant knew of the falsity or had reckless disregard for its falsity.

37. Defendant intended that the representation be acted upon by Plaintiff.

38. Plaintiff was ignorant of the statement's falsity and relied on the statement's truth.

39. Plaintiff had a right to rely on the statement's truth.

40. Plaintiff was consequently and proximately injured.

3

(Compl. ¶¶ 34-40).

The plaintiff's cause of action fails to state a claim. To plead a South Carolina common law cause of action for breach of contract accompanied by a fraudulent act, the plaintiff must plead: (1) breach of a contract; (2) fraudulent intent relating to the breach; and (3) a fraudulent act accompanying the breach. *Minter v. GOCT, Inc.*, 473 S.E.2d 67, 70-71 (S.C. Ct. App. 1996)*; Harper v. Ethridge*, 348 S.E.2d 374, 378 (S.C. Ct. App. 1986). Here, the plaintiff has failed to allege a "fraudulent act accompanying the breach."[1] Accordingly, the claim fails. *See Ball v. Canadian American Express Co., Inc.*, 442 S.E.2d 620, 623 (S.C. Ct. App. 1994) (the fraudulent intent that must be alleged must be related to the breach of the contract, not merely its making).

***Breach of Contract***

The plaintiff's third amended complaint makes allegations related to three alleged contracts: (1) the defendant's progressive discipline policy; (2) the defendant's Random Alcohol/Drug Screening Work Instruction implemented in July 2008; and (3) alleged verbal representations made during a July 2008 employee meeting by the defendant's General Manager, Tom Heiman, regarding the Random Drug Testing Policy. The substantive allegations related to the plaintiff's breach of contract cause of action are as follows:

> 27. As part of Plaintiff's employment with Defendant he was given an employee handbook.
>
> 28. The handbook gives rise to various promises, expectations, and benefits to Plaintiff including progressive discipline and a fair chance to correct problems.

---

[1] In his response in opposition to the motion to dismiss, the plaintiff argues he has met the fraudulent intent element, but does not address his failure to plead a fraudulent act accompanying the breach (pl. resp. m. to dismiss 5).

4

29. An additional set of promises, expectations and benefits was provided to Plaintiff in July 2008 pertaining to drug/alcohol screening. Specifically, Plaintiff was promised that he would be provided a company physician with specific training to interpret and evaluate all positive test results in addition to evaluating the medical history to consider alternative explanations for a positive result. Plaintiff was also given oral promises that he would be given a fair means by which to challenge or refute any allegedly erroneous drug/alcohol test in July, 2008; Plaintiff and other employees were told that the policy included full and fair opportunity to dispute a "false positive" either through a second test or retest of the "false positive" specimen; and reinstatement if in fact the test was erroneous.

30. These promises, expectations, and benefits were offered to Plaintiff in or about July 2008 and form a contract with Plaintiff. Plaintiff is unable to practically articulate all the ways Defendant may perceive the benefits and burdens of this bargained-for exchange, but at this stage from Plaintiff's perspective, the consideration given for the contract is the bargained-for exchange whereby Defendant required Plaintiff to comply with the new drug policy in order to maintain his employment. Likewise, Defendant agreed to comply with the terms of the new policy. There is a writing evidencing some of the contract and that writing is the drug policy implemented as a supplement to the employee handbook in approximately July 2008. There were additional oral promises made accompanying this drug policy in approximately July 2008.

31. Defendant breached this contract by failing to provide Plaintiff a fair opportunity to refute the erroneous drug test, failing to provide Plaintiff progressive discipline, and failing to provide Plaintiff a company physician to evaluate the drug test result and discuss with Plaintiff alternative explanations for the result.

32. This breach of contract caused Plaintiff damages, including but not limited to, lost wages, unnecessary drug test courses and emotional distress.

(Compl. ¶¶ 27-32).

5

Under South Carolina law, "there is a presumption of at-will employment," meaning that either party can sever the employment relationship at any time for any reason or no reason at all. *Prescott v. Farmer's Tel. Co-op., Inc.*, 516 S.E.2d 923, 927 n.8 (S.C. 1999). An employer, however, can alter an employee's at-will status by promulgating policies that are "drafted in sufficiently mandatory terms to give rise to a reasonable expectation on the part of the employee of continued employment." *Toomer v. S.C. Bank & Trust*, No. 5:06-2337, 2008 WL 725792, at *13 (D.S.C. Mar. 17, 2008). Without mandatory language that gives rise to such an expectation, an employer's policies "do[] not contain promises enforceable in contract." *Grant v. Mt. Vernon Mills, Inc.*, 634 S.E.2d 15, 22 (S.C. Ct. App. 2006). For a workplace policy to create a contract for employment, the policy must "promis[e] specific treatment in specific situations." *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005). Further, the South Carolina Court of Appeals has noted that an employer's policies only alter the at-will relationship when they "set[] out mandatory, progressive discipline procedures." *Grant*, 634 S.E.2d at 20.

With regard to the progressive discipline policy, the plaintiff alleges that "[t]he [Innertech employee] handbook gives rise to various promises, expectations, and benefits to Plaintiff including progressive discipline and a fair chance to correct problems" (3rd amended compl. ¶ 28). Because this cause of action references a written contract, evaluation of that contract is appropriate on a Rule 12(b)(6) motion to dismiss (def. m. to dismiss, ex. A). *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (courts may consider documents that are "integral to and explicitly relied on in the complaint," if the authenticity of such documents is not in question). The policy states that "[i]f there is a problem with your performance or conduct, here are the steps normally taken to help you correct it . . . ." The steps are set out as follows:

> 1. Counselling:
> If there has been a problem with performance or conduct, your supervisor will discuss it with you. . . .

6

> 2. Verbal Warning:
> If a problem recurs after counselling, your supervisor will discuss it with you again. . . .
>
> 3. Written Warning(s):
> If a problem recurs after counselling and a verbal warning, your supervisor will discuss it with you again and put a formal written warning in your employee file. . . .
>
> 4. Suspension:
> After the written warnings, if your conduct or performance continues to be unacceptable, you will be suspended from work without pay. . . .
>
> 5. Discharge:
> You will be discharged without further notice if unacceptable performance or conduct continues after you return from suspension.
>
> The stages of progressive discipline exist to help you correct any difficulties you are having on the job. However, if a serious incident occurs, the Company may skip steps in the progressive disciplinary process and can move directly to written warnings, suspensions and/or discharge without the need for prior disciplinary action.

(Def. m. to dismiss, ex. A).

The defendant argues the policy is not mandatory, and thus it does not alter the plaintiff's at-will employment status. The plaintiff argues that because the policy contains both promissory language (e.g., "your supervisor *will* discuss it with you") and a disclaimer ("if a serious incident occurs, the Company *may* skip steps"), it is inherently ambiguous, and thus dismissal of the claim at this stage is improper (*id.*) (emphasis added). This court agrees.

With regard to the defendant's drug policy, the defendant argues that the policy "says nothing at all about an employee's ability to challenge drug test results" (def. m. to dismiss 6). However, the plaintiff counters that "[t]his ignores the oral promises accompanying and interpreting the policy that Plaintiff claims were breached" (pl. resp. m. do dismiss 4). As set forth above, the plaintiff alleges in his third amended complaint:

7

> Specifically, Plaintiff was promised that he would be provided a company physician with specific training to interpret and evaluate all positive test results in addition to evaluating the medical history to consider alternative explanations for a positive result. Plaintiff was also given oral promises that he would be given a fair means by which to challenge or refute any allegedly erroneous drug/alcohol test in July, 2008; Plaintiff and other employees were told that the policy included full and fair opportunity to dispute a "false positive" either through a second test or retest of the "false positive" specimen; and reinstatement if in fact the test was erroneous.

(3rd amended compl. ¶ 29). Based upon the foregoing, this court finds that the plaintiff has alleged facts sufficient to state all the elements of his contract claims, and thus dismissal under Rule 12(b)(6) should be denied.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendant's partial motion to dismiss (doc. 78) be granted as to the plaintiff's breach of contract accompanied by a fraudulent act cause of action, and denied as to the plaintiff's breach of contract cause of action.

                                                      s/Kevin F. McDonald
                                                      United States Magistrate Judge

November 5, 2010

Greenville, South Carolina